IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA

RECEIVED

2007 MAR -7  A 9: 15

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

TOMMY FORD # 111562
Full name and prison number
of plaintiff(s)

v.

RICHARD ALLEN, et al;

_____

_____

_____

_____

Name of person(s) who violated
your constitutional rights.
(List the names of all the
persons.)

)
)
)
)
)   CIVIL ACTION NO. 2:07CV203-mef
)   (To be supplied by Clerk of
)   U.S. District Court)
)
)
)
)
)
)
)
)
)
)
)

I.  PREVIOUS LAWSUITS
    A.  Have you begun other lawsuits in state or federal court
        dealing with the same or similar facts involved in this
        action?  YES (  )  NO ( ✓ )

    B.  Have you begun other lawsuits in state or federal court
        relating to your imprisonment?  YES (  )  NO ( ✓ )

    C.  If your answer to A or B is yes, describe each lawsuit
        in the space below.  (If there is more than one lawsuit,
        describe the additional lawsuits on another piece of
        paper, using the same outline.)

        1.  Parties to this previous lawsuit:

            Plaintiff(s) _____N/A_____

            Defendant(s) _____N/A_____

        2.  Court (if federal court, name the district; if
            state court, name the county) _____
            _____N/A_____

3. Docket number __N/A__

4. Name of judge to whom case was assigned __N/A__

5. Disposition (for example: Was the case dismissed? Was it appealed? Is it still pending?) __N/A__

6. Approximate date of filing lawsuit __N/A__

7. Approximate date of disposition __N/A__

II. PLACE OF PRESENT CONFINEMENT __FOUNTAIN CORRECTIONS FACILITY 3800, ATMORE, ALABAMA__

PLACE OF INSTITUTION WHERE INCIDENT OCCURRED __J.O. DAVIS CORR. FAC., WORK-RELEASE CENTER__

III. NAME AND ADDRESS OF INDIVIDUAL(S) YOU ALLEGE VIOLATED YOUR CONSTITUTIONAL RIGHTS.

NAME                                   ADDRESS

1. _____

2. _____

3. _____

4. _____

5. _____

6. _____

IV. THE DATE UPON WHICH SAID VIOLATION OCCURRED __1996-7, 1997-8, (1998-99 WORK-RELEASE CENTER)__

V. STATE BRIEFLY THE GROUNDS ON WHICH YOU BASE YOUR ALLEGATION THAT YOUR CONSTITUTIONAL RIGHTS ARE BEING VIOLATED:

GROUND ONE: __SEET ATTACHED SHEET__

2

STATE BRIEFLY THE FACTS WHICH SUPPORT THIS GROUND. (State as best you can the time, place and manner and person involved.)

_____

_____

_____

_____

_____

GROUND TWO: _____

_____

SUPPORTING FACTS: _____

_____

_____

_____

_____

_____

GROUND THREE: _____

_____

SUPPORTING FACTS: _____

_____

_____

_____

_____

_____

3

STATE BRIEFLY THE FACTS WHICH SUPPORT THIS GROUND. (State as best you can the time, place and manner and person involved.)

_____

VI.  STATE BRIEFLY EXACTLY WHAT YOU WANT THE COURT TO DO FOR YOU. MAKE NO LEGAL ARGUMENT. CITE NO CASES OR STATUTES.

_____

_____

_____

_____
Signature of plaintiff(s)

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED on ____3-3-07____.
            (Date)

_____
Signature of plaintiff(s)

4

(2). The petitioner avers, that the Alabama Correctional Time Act, (14-9-41), Code Of Alabama, Acts 80-446) violates administrative procedures, violates state constitutional requirements for passage of legislation or federal protection and "due process" guaranteed in the way that it has and still being administered by selective implemenation through the department of corrections classification and administrative department.

(3). Acts 80-446, violates article 4, of the alabama constitution because it contains a provision which broaden the scope of the act beyond that expressed in the title.

(4). Acts 80-446, violates Article 4, 61, of the alabama constitution (1901), because an amendment to the act changed the original purpose of the act.

(5). Acts 80-446, on its face, violates the "equal protection" guarantees of the fourteenth amendment, Article 4, each law shall contain one subject, which shall be clearly expressed in this title,(in its title).

### HABITUAL FELONY OFFENDERS

Acts 80-446 prohibited felony offenders from receiving any deduction from their sentence...however, in 1991, this act was in effect from an earlier legislative passage (1981). In 1991, the "goodtime Incentive Act" 14-9-41, was amended, this amended act allowed inmates with 15 years or less to receive the benefits of receiving incentive goodtime credits. This amendment also allowed habitual offenders to receive goodtime credits and deductions from their sentence. This amended act was, in violation of acts 80-446.

(6). Acts (80-446), codified in (14-9-41) code of alabama reads...
(A). Each prisoner who shall thereafter be convicted of any offense against the laws of the state of alabama and is confined, in the execution of judgment or sentence upon any conviction, in the penitentary or at hard labor for the county or any municipal jail for a definate or inderterminate term, other than for "life" whose records of conduct shows that he has faithfully observed the rules for a per-

iod of time to specified by the article may be entitled to earn a deduction from the term of his sentence as follows:

(1). SEVENTY-FIVE (75) DAYS FOR EACH 30 DAYS ACTUALLY SERVED WHILE THE PRISONER IS CLASSIFIED AS A CLASS (1) PRISONER,

(2). FORTY(40) DAYS FOR EACH (30) DAYS ACTUALLY SERVED WHILE THE PRISONER IS A CLASS (2) PRISONER,

(3). TWENTY (20) DAYS FOR EACH (30) DAYS ACTUALLY SERVED WHILE THE PRISONER IS A CLASS (3) PRISONER

(4). No goodtime shall accrue during the period the prisoner is classified as a Class IV prisoner.

(b). Within 90 days after may 9, 1980, the commissioner of the department of corrections shall establish and publish appropriate directive certain criteria not in conflict with this article for class 1,2,3, and 4 prisoners, classification shall encompass consideration of the prisoners behavior, discipline, and work practices and job responsibilities.

(7). The petitioner avers that, he has been denied goodtime credits based soley on the length of his sentence 14-9-41(e), yet, he has been classified at one time or another during his incarceration as a class 1,2,3, and 4 prisoner. The petitioner has been to work release, honor camps, and work camps, throughout his incarceration he has proven through the years to be cooperative and respect authority, work hard on every detail, and has proven to be trust worthy. The petitioner did not receive any goodtime credits while in those classes.

(8). The commissioner has implemented a policy in classifing prisoners to a certain class...class 1,2,3, and 4. When prisoners is placed in either class of the above classes, there is a procedure and policy that the prisoner mest comply with in order to stay in that class or move to a higher but less restrictive class. Each class is implemented around an inmates behavior, disciplinary history, discipline and ability to work. Each class afford that prisoner a certain amount of goodtime to be earned and a deduction from his sentence while in that particular class. The department of correction are placing prisoners in those classes, but are denying to them the goodtime while in that class, that is afforded to them by that class,

14-9-41 0f the code of alabama, (14-9-41) of the code of alabama

governs the amount of goodtime credits each prisoner must earn or can earn while in a particular class. This section also governs the amount of time a prisoner must remain in a particular class before being eligible for a lesser restrictive class. Prisoners are being placed in 1,2,3, and 4 under a condition that has been imposed, and implemented by the alabama legislature which governs the prisoners conduct, behavior, and ability to adjust to prison "life", however prisoners are being denied the benefits to receive incentive goodtime credits in that class by the department of corrections, even though each class affords prisoners the priveledge to receive those credits . Prisoners with "SEX" CRIMES AND VIOLENT" OFFENDERS RECEIVE THE BENEFITS of goodtime credits while prisoners with none violent or property crimes are being denied goodtime credits or any reduction from their sentence while in those classes...the inmates which are supposed to be prohibited from earning goodtime credits are "habitual offenders" those convicted of a class "A" felony and "Trafficking" are in fact the very ones that are receiving goodtime credits.

(9). Acts 80-446, codified in 14-9-41 code of alabama reads:

(1). Class 1 is set aside for those prisoners who are (considered), to be trustworthy in every respect and who, by virtue of their work habits, conduct an attitude of cooperation, have proven their tru worthinestworthiness. ple an examples of a class 1 prisoner is one who could th work without constant supervision by a security officer.

(2). Class 2 is that category of prisoners who will be under the supervision of a correctional employee at all times. Any inmates shall remain in this class for a minimum period of (6) months before being eligible for class 1.

(3). Class 3 is set aside for prisoners with specisl assignments. They may not receive the priveleges of class 1 and 2 prisoners. Any inmate shall remain in this classification for a period of minimum of three months before being eligible for class 2.

(4). Class 4 is for those prisoners not yet classified and for those who are able to work and refuse, or who commit disciplinary infraction of such a nature which do not warrant a "higher classification". Inmates that are classified in this earning class receives no correctional incentive goodtime. This class is generally referred to as

flat time or day for day. Any inmate shall remain in this classification for a minimum of thirty (30) days before being eligible for class (3).

There is nothing contained in class 1,2, or 3 which prohibits a prisoner from receiving goodtime credits while in that class, yet, the department of corrections are denying inmates goodtime while in class 1,2,or 3 based soley on the length of their sentence without any consideration to the seriousness of their offense, crimes or convictions. Prisoners that have been prohibited from earning goodtime by the legislature deeming their crimes to serious to receive beneficiary treatment are receiving goodtime by the department of corrections while in class 1,2,or 3......(SEX OFFENDERS AND CHILD MOLESTORS SHOULD NOT RECEIVE ANY REDUCTIONS FROM THEIR SEN_ TENCES AND CONVICTION)

(11). The petitioner avers that, he is being denied "equal protection" of the law under 14-9-41, subsection (e) because, he has been sentenced to a term over (15) years.

(A). Example; the legislature amended section (15-18-8) code of alabama may 19, 2000, to allow prisoners that are sentenced to a term of imprisonment 20 years or less to have their sentence split, yet, the legislature obviouely deemed the nature of their offense to serious to merit the benefits of receiving goodtime sentence reductions. It is reasonable to assume that the legislature also concluded that anyone who receive a sentence in the class :A" felony range would not merit beneficial treatment....when a prisoner is convicted of a class "A" felony and receive a sentence oe 20 years and have that sentence split to serve three years incarceration and the maximum years of five years probation, that prisoner will be allowed to complete his entire twenty(20) years sentence in eight (8) years without any further supervision by the state of alabama, however, when a prisoner is sentenced to that same term of imprisonment and does not have his/her sentence split under the split sentence act, that prisoner will have to serve his entire sentence either on parole, if paroled, or in the department of corrections. When 15-18-8 split sentence act was amended, the goodtime incentive act 14-9-41 of the code of alabama should also have been amended in order to bring the same prisoners and less violent prisoners within

the same category of sentence reductions under "equal protection" of the law.

(1). One of the purposes of the requirement of this section 45,supra, that the subject of law shall be clearly expressed in the title, is to prevent surprise or fraud upon legislature by incorporating in "Bill" provisions not reasonably disclosed by its title, and which might be overlooked, and unintentionally approved in enacting(THE BILL), 247 so 2d (123 so 2d 505).

(2). The incentive goodtime credit statute is being applied arbitrary and selective by the department of corrections against legislative intent.

(3). Prisoners are being denied goodtime soley on the length of their sentences and not the seriousness of their offense.

(4). Inmates are classified under a behavior system. This system classify(s) inmates and place them in a class 1,2,3, each class provides inmates with the opportunity to receive goodtime credits and reduction of sentence.

(5). Repeated "SEX" offenders and repeated "VIOLENT" offenders receives benefits of incentive goodtime credits while the majority of inmates with less serious crimes to include "none violent" offenses are being denied such incentives.

(6). Inmates are categorically denied goodtime by the department of corrections which is in violation of legislature intent:SEE LOPEZ V. DAVIS.

(A). Act 80-446 violates alabama constitutional amendment: section 61 by its 1991 amemdment,
Act 80-446 "Incentive Goodtime Credits" was passed in 1980, by the alabama legislature, the "BILL" denied goodtime credits to prisoners who had been sentenced to "life" or "Death", subsection (e) broaden those credits to deny prisoners who have been convicted of a class "A" felony, those who received a sentence of 10 years now (15) years , and, no person may be placed in class 1 if he/she has been convicted of an assault where the victim of such assault suffered the permanent

loss or use or permanent partial loss or use of any bodyily organ or appendage, those that has been convicted of sexaul assault upon a "child" under 17 years old are prohibited form earning class 1 credits, but not class 2 or 3 earning class.

The habitual offender act of 1981, also prohibited prisoners that has been sentenced as a habitual offender from receiving any reductions from sentence. Habitual offenders were not the only class that was prohibited from earning goodtime by the legislature statute, inmates who received a sentence of 10 years or more and those inmates who receives a sentence in the class "A" felony was also precluded. (minimum sentence a habitual offender can receive is 15 years).

Act 80-446 was amended from 10 years to 15 years, act of july 31, 1991, No. 91-637, codified at ala. code 14-9-41 (e) act 1201 effective october 29, 1991. The act was amended because the prison system was "dangeriously overcrowded" with habitual offenders, when this act was amended it "drastically" changed the purpose of the act. The amendment allowed the habitual and repeated habitual felony offenders the benefits of receiving goodtime credits and a reduction from their sentence in violation of legislative intent...(this was totally against the legislative purpose of passing the act). The legislature in passing act 80-446, made it be known that habitual felony offenders would not receive any goodtime or reduction from sentence pursuant to this act. This amendment was also applied retroactively... when the act was amended to allow goodtime credit and reduction from sentence, this amendment also denied inmates "equal protection" of the law when this amendment did not grant inmates who was a habitual offender with sentences of 15 years or more. The legislature not only denied habitual offenders goodtime, but also denied prisonerd who were convicted of a class "A" felony or received a sentence in the class "A" felon range, (when a prisoner receive a sentence of 10 years or more, that doesn't mean that person has commited a serious offense.

Brooks v. State 622 so 2d 447 (reversed and remanded), denial of goodtime credits violated prisoners equal protection when the reason for such denial was based soley on the time of conviction and not determination about the nature or seriousness of the offense. The court observed that it was rational to deny goodtime benefits to both class "A" felony(s) and those who have been sentenced to 10 years or more, because the latter group receives a sentence in the class "A" felony range, and therefore, could be considered serious

offender, the maximum sentence for a class "A" felony is 10 years. Alabama code 13A-5-6.. are... ineligible for goodtime because the legislature deemed the nature of their offense to serious to merit the benefits of goodtime sentence reduction. It was resonablt assumed that the legislature also concluded that anyone who received a sentence in the (legislative act) class "A" felony range would also not merit beneficial treatment. Thomas v. state 552 so 2d 875, Gaines v. State 581 so 2d 448. The supreme court concluded that there is a "preceivable" set of facts under which a statutory discrimination against "Sex Offenders" is revelant to and justified by permissible legislative purpose, that perceivable set of facts includes the possibility that a convicted sex offender who is not rehabilitated might might be released early.

When the legislature amended 14-9-41 (e) in 1991 from 10 years to 15 years, it qualified the habitual felony offenders to receive goodtime credits, this amended act came in conflict with prior legislative law which prohibited habitual offenders from receiving goodtime, this amendment also expanded the goodtime eligibilty to include inmates sentenced to longer prison terms presumably for a more serious crime. 275 ala 254, opinion of justice...one of the purpose of the requirement of section 45, supra, that the subject of a law shall be clearly expressed in its title, to prevent surprise or fraud upon the legislature by incorporating its bill provision not reasonably disclosed by its title, and which might be overlooked. Kendrick v. Boyd 255 Ala. 53, so 2d 694, Taylor v. Johnson 265 Ala. 541.

Ex-Parte Hilsabeck 477 so 2d 472. The purpose of act 80-446, is clearly expressed as one to establish the "Alabama Correctional" incentive act", that alone state that the legislature deals with goodtime for inmates. The next title respectfully states that the act establishes "certain criteria" for earned deductions and creates "classification for measurment of such deductions and eligibility thereof (habitual offenders) are mention as one of the groups excluded from earning goodtime credits...Act 80-446 violates article 4 section 61, of the alabama constitution . Section 61 provided "no law shall be so altered or amended on its passage through either house as to change its original purpose.

Acts 80-446 was made clear and unambigious in its provision when uncertainty was injected into the act when its provisions was attempted to be broaden or expanded the language of the act.

(Rickett v. State 903 F. 2d 447) Selective and disparate treatment violation of equal protection. (Impermissable Classification) Wayne v. State, 84 L. ed 2d 547.

Alabama deals with a racial classification system embodied in a criminal statute the 1991 amendment does not order the exclusions by defining the statutory terms of prisoners convicted of "none violent" offenses or the cognate terms crimes of violence instead, the current regulation relies upon the discretion alloted to the commissioner of the department of corrections in granting a sentence reduction to exclude categories of inmate, the administration regulation, designed to achieve consistent administrative of the incentive, now provides,

(1). Inmates who are sentenced to 15 years are less to include habitual criminals the priveledge of receiving goodtime credits and allowed violent offenders with longer prison terms that was prohibited by the legislature to receive goodtime under the new amended act.

Inmates with less serious crimes and property crimes are being denied goodtime credits based soley on the length of their sentence. They are also "Bracketed" in a category with violent offenders because the department of corrections suggests that they poses a particular risk to the public...while the plaintiff has been incarcerated he has been classified as a class 1,2,3, prisoner at some point during his incarceration to include less restrictive camps, but has been categorically denied the benefits of good time while in these class.

The question to be answered pertaining to this fact of law is; could the department of corrections place an inmate in a category which grants goodtime credits, and then deny that inmate goodtime credits based soley on the length of his sentence without consideration as to the seriousness of the crime? This kind of selective action by the department of corrections is what caused the statute to be ambigious and deny him equal protection, and due process of law. If the legislature wanted the department of corrections to reduce the category of inmates eligible for early release incentives(beyond the ones identified by the legislature), the legislature would have specifically placed this grant of authority in the language of the statute. And if the department of corrections have discretion to deny early release to some inmates, but only based on an inmates sentence and not the factors therein, then the agency cannot categorically deny early

release even to the recidivist with prior, or perhaps "multiple" convictions of "rape" "robbery", "homicide" or any other crime of violence. The question to this issue is: **did the legislature of alabama** intended for all inmates to receive some reductions from their sentence who has been convicted of none violent crimes?

Did the alabama legislature intended for "Sex" offenders and repeated "Violent" offenders to receive goodtime credits and receive a early release from prison?

Did the legislature intended for habitual felony offenders to receive goodtime credits and an early release from their sentence?

Did the legislature intended to allow inmates with sex offenses, and violent offenses to receive the benefits of goodtime credits, and deny inmates with property offenses this benefits based soley on the length of a person sentence and not the seriousness of their offense? We deal here with a ambigious statute, which grants goodtime credits to the majority of "sex" offenders, and denies goodtime to a majority of inmates who has been convicted of less serious crimes where the power of the states weighs most heavily upon the individuals or group, we must be especially sensitive to the polices of the equal protection clause which, reflected in legislative enactments dating from 1870, were intended to secure "full and equal benefits of all laws and proceedings for the security of persons" to like punishments, pains, penalties, taxes, liscenses, and exactions of every kind, and to others. When the law lays an unequal hand on those who have commited instrincically the same quality of offense and sterilize one and not the other, it has made invidious a discrimination as if it had not the other, it has selected a particular race or nationality for oppressive treatment. (Yick Wo v. Hopkins 80 L. ed 2d 220).
Subsequent legislation declaring the intent of an earlier statute is entitled to significant weight...although a mistaken opinion of the legislature concerning meaning of an earlier statute does not itself make law, such an opinion must never the less be given the effect of law, prospectively if it is expressed in words competent to make make. Since it is within the power of the legislature for the future, although inoperative as the past

The pronouncement of legislative commitee respecting, the manning of previously enacted statute was entitle to consideration weight in the judicial construction of the statute, where the commitee in question was the one which had reported the bill on which the statute was based (Quern v. Mandley 56 L. ed 2d 134 918) See; also (Mclaighin v. Florida 18 L. ed 2d 222) (Brown v. Dubchesne, 15 L. ed 2d 595 (NLRB V. BELL AEROSPACE CO. 40 L. ed 2d 134)(Pronouncement of leg=islature 50 L. ed 2d 918) (Statutory Generally 41 L. ed 2d 134)(Thorton v. Hunt 852 F. 2d 526)(95 A.L.R. 2d 1256)(Brooks v. State 622 so 2d 477) (Classification Of Inmates)(Construction of Law)(Conlogue v. Shinbaum 49 F. 2d 378)(Frazier v. Munson 703 L ed 2d 30)(Faulkner v. State 586 so 2d 39)(Hilsabeck)(Ex parte Hilsebeck 477 so 2d 465).......

## "SEX OFFENDERS"

McKune v. Lile (2000) 153 L. ed 2d 47, "Sex Offenders" are serious threat in this nation, in 1995, an estimated 395,000 rapes and sexual assaults occured nationwide. U.S. Department of justice, bereau of justice stastics, sex offenders offenses reported between 1980 and 1994, the population of imprisonment of sex offenders increased at a faster rate than any other category of violent offenses,(violent crimes). As in most sexual cases, the victim of sexual assault are most juveniles. In 1995, for instances, a majority of the reported forcible sexual offenses were commited against persons under 18 years of age...(University of New Hamsphire) crimes against children research center fact sheet. Nearl 4 out of 10 imprisoned, violent sex offenders said their victim was 12 years of age or younger...when convicted sex offenders re-enter society, they are much likely to re-offend, be re-arrested for a new rape or sexual assault.

Lopez v. Davis 531 U.S. 230, 148 L. ed 2d 635, 121 S. ct 714, Title (18 usc & 3621) Governs the imprisonment of persons convicted of federal crimes. In 1990, congress amended the statute to provide that the bereau shall... make availible appropriate substance abuse treatment for each prisoner. The bereau determines who has a treatable condition of substance addiction or abuse. Four years later, congress again amended 3621. This time to provide incentives for prisoners participating in the program. The incentive provision of that section reads: the period of a prisoner convicted of none violent offenses remains in custody after successfully completing a treatment program

may be reduced by the bereau of prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.

In 1995, the bereau published a rule to implement the early release incentive. 60 Fed reg 27692-27695; CFR & 550. 59. Because the statute explicitly confined the incentive to prisoners convicted of "none violent" offenses 18 U.S.C. & 3621(e)(2)(b), the BOP ranked ineligible for early release all inmates currently incarcerated for crimes of violence. 60 Fed Reg 27692. As explained in the BOP program statement, the BOP defined "crimes of violence" to include a drug trafficking conviction under 21 USC.

3621 (e)(2)(b) required the bereau to look into only offenses of conviction (drug trafficking), and not to sentencing factors(Fire arm possession), in determining whether an offender was convicted of a none violent offense, and therefore eligible under the statute for the early release incentive.

In contrast to the earlier rule. However, the 1997 regulation does not order this exclusion by defining the statutory term prisoners convicted of a none violent offense, or cognate term crimes of violence. Instead, the current regulation relies upon the discretion allotted to the director of the bereau of prisons in granting a sentence reduction to exclude categories of inmates. The regulation designed to acheive consistent administration of the incentive, now provides:

(a). Additional early release criteria. (1) as an exercise of the discretion invested in the director of the BOP, the following category of inmates are not eligible for early release:

(IV) Inmates who have a prior felony or misdemeanor coviction for homicide, forcible rape, robbery, aggravated assault, or child sexual abuse offenses;

(IV). Inmates whose currently offense is a felony:
(B) That involved in carrying, possession, or use of a firearm or other dangerous weapon...to the bureau asserted discretion to prescribe additional early release criteria. Drug trafficking who possess firearms when they engage in crimes are no longer characterized as "violent offenders" within the meaning of the statute. But they are bracketed, for the sentence reduction purpose with persons currently incarcerated for "non violent" offenses who in the pass comm-

ited crimes that qualified as violent. The preconviction conduct of both armed offenders and certain reciivist in the bureau's view, suggest that they pose a particular risk to the public...In 1997, the petitioner Christopher A. Lopez was convicted of possession with intent to distribute methamphetamine in violation. Upon finding that lopez possed a firearm in connection with his offense, the district court enhanced his sentence two levels. While incarcerated, Lopez requested substance abuse treatment. The bureau found him **qualified** for the resident drug treatment program, but categorically ineligible for early release. The court reversed. (Bellis v. Davis 186 F. 3d 1092 1991). The statute provides the period a prisoner convicted of a non violent offense remains in custody after successfully completing a drug treatment program may be reduced by the BOP.

The measure thus categorically denies early release eligibility to inmates convicted of violent offenses. The question we address is whether the bureau has discretion to delinate, as an additional category of ineligible inmates, those whose current offenses is a felony conviction involving a fire arm.

Lopez urges that the statute is unamibigious, he says that, by identifying a class of inmates ineligible for sentence reduction under 3621 (e) (b), those convicted of a violent offense, congress has barred the bureau from identifying further categories of ineligible inmates. If congress wanted the BOP to reduce the category of inmates eligible for early release incentives(beyond the ones identified by congress) congress would have specifically placed this grant of authority in the language of the statute. Congress used the word "may" rather than "shall", has no significance. And if the BOP does have discretion to deny early release to some inmates, but categorically deny early release even to the recidivists with prior (perhaps multiple) convictions of rape, robbery, homicide etc., for that provision, as much as the exclusion of inmates imprisoned for the offense involving a fire arm , entails no individualized determination based on post-conviction conduct. (A prisoner serving a term of one year and less than life, may receive credits towards the service of the prisoners sentence...subject to determination by the BOP that, during that year the prisoner has displayed exemplary compliance with such institutional disciplinary regulations").

The question at issue in this case, is whether congress merely intended for some of federal inmates who were convicted of non violent crimes and who has successfully completed a bureau of prisoners drug treatment program are eligible for sentence reduction...the court stated; I believe congress has answered the precise question. The ststute expessely states that the sentence of every prisoner in that category "may be reduced", both the text of the statute and the aforementioned history demonstrate that congress directly addressed the precise question of what offense ought to be disqualified and prisoners disqualifcation for eligibilty for sentence reduction, and its "unambigious answer was "violent offenses". Under the statute as enacted, those who commited crimes of violence are categorically barred from receiving sentence reduction while those convicted of none violent offenses "may" receive such an inducement.

## HISTORY

Plaintiff, Tommy Ford #111562, is an inmate at G.K. Fountain Correctional Facility. Plaintiff is serving a term of life imprisonment for the crime of Burglary II degree.

Plaintiff Tommy Ford #111562, was sentenced to life imprisonment in the Mobile County Circuit Court on May 5, 1988, and has been a class 1,2,and 3 inmate at one time or another but has been denied the benefit of that class(s).

## RELIEF SOUGHT

Plaintiff seeks declaratory judgement against the defendant(s) to determine whether the defendant(s) are constitutionally in violation of §14-9-41, code of alabama, when they illegally amended subsection (e) to the preexisting statute thereby conflicting with the clear legislative intent of the aforemention statute.

Tommy Ford #141562
K-1-12-A
Fountain Corr. Fac. 3800
Atmore, AL. 36503

Office of the Clerk
The United States District Court
For the Middle District of Alabama
P.O. Box 711
Montgomery, Alabama
36101-0711